UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARILYN ANN BRITTON,           )
                               )
          Plaintiff,           )     Case No. 1:11-cv-914
                               )
v.                             )     Honorable Janet T. Neff
                               )
COMMISSIONER OF                )
SOCIAL SECURITY,               )
                               )     **REPORT AND RECOMMENDATION**
          Defendant.           )
_____)

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. In September 2007, plaintiff filed her applications for benefits alleging a November 17, 2006 onset of disability. (A.R. 114-25). She later amended her claims to allege a June 21, 2007 onset of disability.[1] (A.R. 28, 150). Her claims for DIB and SSI benefits were denied on initial review. On March 23, 2010, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 25-59). On June 4, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 12-20). On June 30, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, October 2007 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

(1) The ALJ committed error when he found that the work plaintiff performed in 2009 was substantial gainful activity;

(2) The ALJ committed error by "ignoring" plaintiff's impairments; and

(3) The ALJ violated the treating physician rule.

(Plf. Brief at 1, 5, docket # 14). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, No. 12-3553, __ F.3d __, 2013 WL 896255, at * 7 (6th Cir. Mar. 12, 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on June 21, 2007, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 14). Plaintiff had not engaged in substantial gainful activity from June 21, 2007, through December 31, 2008. She had engaged in substantial gainful activity in 2009, which precluded any award of benefits for that year. (A.R. 15). Plaintiff did not engage in substantial gainful activity from January 1, 2010, through the date of the ALJ's decision. (A.R. 15). Plaintiff had the severe impairment of "degenerative disc disease/spondylosis of the lumbar spine." (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or

equaled the requirements of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> The claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b): she cannot lift and/or carry more than 20 pounds occasionally and 10 pounds frequently; sit for more than a total of six hours in an eight-hour period; work without the opportunity to alternate sitting and standing for two to four minutes every hour at her option; climb ladders, ropes, or scaffolds; or balance, stoop, kneel, crouch, crawl, or climb ramps or stairs more than occasionally.

(A.R. 17). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 17-19). The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis, because she was capable of performing her past relevant work as a cashier.[2] (A.R. 20).

### 1.

Plaintiff states that the ALJ committed error when he "added Claimant's travel expense payments into her wages; when travel expenses are subtracted from her gross wages, her income is below the $980.00 per month substantial gainful activity." (Plf. Brief at 1, Statement of Errors ¶ 1). There is no developed argument corresponding to this statement of error, and plaintiff

---

[2] "Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

cites no supporting legal authority. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

Even assuming that plaintiff did not waive the issue, it is meritless. The ALJ found that plaintiff's earnings in 2009 exceeded that year's threshold for substantial gainful activity (SGA):

> Wage verification records submitted by the claimant's attorney post-hearing (Exhibit 9d)[A.R. 151-52] indicate that the claimant earned wages from Comfort Keepers/Butler Services, Inc. totaling $12,895.36 in calendar year 2009. Therefore, her average monthly wages for calendar year 2009 were $1,074.61. Since this amount exceeds $980.00, the amount designated by the Administration as constituting substantial gainful activity for the calendar year 2009, the claimant performed substantial gainful activity from January 1, 2009 through December 31, 2009.

(A.R. 15). The ALJ used a "net pay" calculation provided by plaintiff's employer. (A.R. 152). Plaintiff's net pay for 2009 was $12,895.36, or a monthly average of $1,074.61, which exceeded the SGA threshold.

It was plaintiff's burden at step 1 of the sequential analysis to show that she had not engaged in substantial gainful activity. *White v. Commissioner*, 572 F.3d at 282. Plaintiff's brief provides no calculations or legal authority supporting her assertion that if "travel expenses" were deducted, her income in 2009 would fall below the $980.00 threshold for substantial gainful activity (SGA). Even assuming that plaintiff could exclude reimbursement for travel expenses from her earnings, her "countable earnings" would still exceed the SGA level, because gross earnings are the starting point under the SGA test. *See* 20 C.F.R. §§ 404.1574(a)(1); 416.974(a)(1); *see also Titles II & XVI: Determining Whether Work is Substantial Gainful Activity - Employees*, SSR 83-33 (reprinted at 1983 WL 31255 (S.S.A. 1983)); http://www.ssa.gov/oact/cola/sga.html (last visited

Mar. 21, 2013). The focus is on earnings derived from work activity.[3] 20 C.F.R. §§ 404.1574(a)(1); 416.974(a)(1). "Standard payroll deductions (e.g. Federal and State taxes, insurance premiums, Federal Insurance Contribution Act taxes, pension payments, union dues, etc.) [] are not deductible from gross earnings because they are attributable to a person's work activity." 1983 WL 31255, at * 2. Plaintiff received $12,569.14 in wages[4] (A.R. 152), or a monthly average of $1,047.43, which remains in excess of the SGA threshold. The ALJ's finding that plaintiff was not disabled in 2009 because she was performing substantial gainful activity is supported by more than substantial evidence.

**2.**

Plaintiff's argument that the ALJ "ignored" her impairments is set forth verbatim and in its entirety below:

> It is clear that the claimant has numerous medical impairments which were completely ignored, such as her thoracic spine, bilateral knee conditions, radiculopathy, chronic pain and fatigue.

---

[3]"Subsidies" are excluded from countable earnings. *See* 20 C.F.R. §§ 404.1574(a)(2); 416.974(a)(2); *see also Henn v. Commissioner*, No. 2:11-cv-385, 2012 WL 2814011, at * 13 (M.D. Fla. June 14, 2012) ("The actual value of work performed is ascertained by plaintiff's gross earnings less any subsidized earnings provided by plaintiff's employer."). SSR 83-33 indicates that "subsidies" are higher than market value rates paid for work: "An employer may, because of a benevolent attitude towards a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed. When this occurs, the excess will be regarded as a subsidy rather than earnings." 1983 WL 31255, at * 3. Plaintiff presented no evidence that she was paid anything other than a market rate for her work. Thus, she failed to carry her burden at step 1 of the sequential analysis of showing a "subsidy" that the ALJ should have excluded.

[4]The "wages" figure did not include any amount attributable to reimbursement for travel expenses. (A.R. 152).

> The Claimant's complaints have been consistent and ongoing every year since her fall from a ladder in 2005.
>
> MRI's and x-rays corroborate her disabling complaints.

(Plf. Brief at 5). There is no legal authority supporting plaintiff's argument. This issue, like the last one, is raised in a perfunctory manner; it is therefore deemed waived. *See Clemente v. Vaslo*, 679 F.3d at 497.

Even assuming that plaintiff did not waive the issue, it is meritless. The above-quoted sentences could indulgently be construed as a claim that the ALJ should have found additional "severe" impairments at step 2 of the sequential analysis. The finding of a severe impairment at step 2 is a threshold determination. The finding of a single severe impairment is enough and requires continuation of the sequential analysis. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had a severe impairment. (A.R. 15). The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). The ALJ continued the sequential analysis and considered all plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC. (A.R. 13, 17-19).

Plaintiff's argument could be considered as a challenge to the ALJ's factual finding regarding her credibility. Credibility determinations are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an

administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ carefully explained why plaintiff's testimony was not fully credible. (A.R.18-19). Among other things, the ALJ noted that plaintiff's extensive daily activities undermined her claims of disabling functional limitations:

> The claimant maintains an independent residence, reporting that she resides in a house with her husband. She indicated that her daily activities consist of preparing meals, performing household cleaning tasks, tending to the needs of pets, visiting with others by telephone, and watching television. As previously discussed, she also works part-time as a companion/home care aide several hours per week. She remains able to drive as the need arises, shop for groceries, launder clothes, sweep floors, dust furniture, and attend to her personal needs without assistance. She indicated that her husband will carry heavy groceries and assist her with tending to their pets. She is able to handle financial matters and attend to the payment of bills. She enjoys playing Scrabble and drawing; she also plays computer games occasionally and maintains at least one close friendship. She did not allege any difficulty getting along with others or responding appropriately to those in authority (Testimony and Exhibits 2e, 3e, 4e, 7e, 13e, 14e).

* * *

> Furthermore, per her own admissions, the claimant has clearly maintained a significant amount of daily activities since June 21, 2007, the date she alleges she became disabled and unable to work, including the performance of work activity at a level consistent with substantial gainful activity for the entire calendar year of 2009. The undersigned is simply not convinced that the overall record is reflective of an inability by the claimant to perform all work activity.

(A.R. 18-19). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find that the ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence and that the ALJ did not ignore any medical condition documented in plaintiff's records.

**3.**

Plaintiff argues that the ALJ violated the treating physician rule. (Plf. Brief at 5-6). However, her attorney fails to identify the physician by name or to identify the medical opinion which purportedly failed to receive appropriate deference. (*Id.*).

Even assuming that plaintiff did not waive the issue, I find no basis for disturbing the Commissioner's decision. Plaintiff's attorney presents the court with a multiple-step scavenger hunt, first to find the treating physician, and then to locate the medical opinion which purportedly failed to receive appropriate deference. The first step is not particularly difficult. The heading "TREATING PHYSICIAN RESTRICTIONS" appears in another section of plaintiff's brief. (Plf. Brief at 2). "Dr. Wilson" is the only physician mentioned under the heading. Thus, it is a reasonable inference that plaintiff's attorney was referring to David Wilson, M.D., as the "treating physician." This inference is further reinforced by the fact that no other physician is described as a treating

physician in her brief. (Plf. Brief at 1-6). If a physician's medical opinion had appeared under the treating physician heading, the court's remaining analytical task would be uncomplicated. Unfortunately, what appears in plaintiff's brief under the treating physician heading is a heavily edited quote[5] from the hearing transcript, wherein plaintiff's attorney elicited testimony from his client in an attempt to reduce the adverse impact of Dr. Wilson's progress note dated September 23, 2009. (A.R. 451, Ex. 14F, p. 15). The treating physician's progress note stated that plaintiff was capable of lifting up to fifty pounds and over twenty pounds frequently:

> Q   Okay. Dr. Wilson was commenting back, not too long ago, on what he was thinking about your restrictions. And he said something at 14F, Page 15, that I wanted to ask you about. He said, "Although, she has seen some improvement, I don't think she's capable of full-time work. *Probably should limit herself to six hours a day or less." Then he says, "Lifting over fifty pounds ever, and over twenty pounds frequently." I'm assuming he meant to say no lifting over fifty pounds and no lifting over twenty pounds frequently. That's the only way that really makes sense to me.*
>
> A   *Yeah, because the last time he say me* [sic]*, he told me ten, fifteen maximum for just a couple, just to move one or two things.*
>
> Q   And you saw him -- at what time did he say that to you, the ten pounds? Was that sometime this year?
>
> A   Yes.
>
> Q   Okay. So he's cutting your -- cutting your tolerance level for those things back considerably; correct?
>
> A   Hmm-hmm.

(A.R. 50-51). Plaintiff presented no medical evidence supporting her testimony that sometime after September 23, 2009, Dr. Wilson had imposed a lifting restriction of ten-to-fifteen pounds.[6] Dr.

---

[5] The portions of hearing transcript omitted in plaintiff's brief are presented in italics.

[6] Even assuming that Dr. Wilson had suggested more significant RFC restrictions, they would not have been entitled to any special significance because RFC is an issue reserved to the

Wilson's records do not indicate that he made any changes in the restrictions he endorsed on September 23, 2009. (A.R. 437-51). Plaintiff's testimony is not a medical opinion of a treating physician entitled to deference under the treating physician rule.

Elsewhere in her brief, plaintiff states: "Treating physicians have substantiated her disabling symptoms and limited her to part-time sedentary work." (Plf. Brief at 5). A review of the entire medical record reveals that Dr. Wilson's progress note of September 23, 2009, suggested part-time work, but that he never restricted plaintiff to sedentary work:

> I don't think she is capable of full time work and should probably limit herself to 6 hours per day or less, lifting over 50 pounds ever and over 20 pounds frequently, repetitive bending/kneeling/crawling. F/U in 3 months. Patient acknowledged understanding and agreement with the plan.

(A.R. 451). The ALJ's finding that plaintiff retained the RFC for a limited range of light work was consistent with the above-referenced exertional and postural limitations endorsed by plaintiff's treating physician[7].

Plaintiff's remaining argument is the following statement: "it was also error to reject the claimant's fibromyalgia claim." (Plf. Brief at 5) (citing *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007)). It is difficult to discern what argument plaintiff is attempting to articulate. In *Rogers*, the Sixth Circuit acknowledged the medical difficulty of making a diagnosis of a condition that "present[s] no objectively alarming signs." *Id.* at 243. "The process of diagnosing fibromyalgia

---

Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

[7]Dr. Wilson suggested part-time work. It is well established that part-time work can be substantial gainful activity. *See Davis v. Secretary of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990); 20 C.F.R. §§ 404.1572(a), 416.972(a); *see also Hammond v. Chater*, No. 96-3755, 1997 WL 338719, at * 2 (6th Cir. June 18, 1997) ("[T]he regulations define 'substantial gainful activity' as including part-time work.").

includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* at 244. "The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and -- the only symptom that discriminates between it and other diseases of a rheumatic character -- multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Huffaker v. Metropolitan Life Ins. Co.*, 271 F. App'x 493, 500 n. 2 (6th Cir. 2008) (quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003)). It was entirely appropriate for the ALJ to note that when Dr. Wilson mentioned "positive trigger points" he did not "document the necessary findings required by the American College of Rheumatology to truly support [a] diagnosis [of fibromyalgia]; such requires that 11 out of 18 possible specific trigger-points be positive for pain, as opposed to tenderness, upon digital palpation." (A.R. 16, 453). *See e.g.*, *May v. Astrue*, No. C 09-5591, 2010 WL 3947502, at * 11 (W.D. Wash. Oct.6, 2010); *Andreas v. Commissioner*, No. 1:08-cv-170, 2009 WL 427377, at *4 (W.D. Mich. Feb.18, 2009). "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits...." *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir.2008); *see Infantado v. Astrue*, 263 F. App'x 469 (6th Cir. 2008); *Arnett v. Commissioner*, 76 F. App'x 713 (6th Cir. 2003). "'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.'" *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)). I find no violation of any aspect of the treating physician rule.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  March 27, 2013            /s/  Joseph G. Scoville
                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).